**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

FRED PLUMMER                              :
                                          :
            Plaintiff,                    :
                                          :      Civil Action No. 07-01161
            v.                            :      Judge Urbina
                                          :
DISTRICT OF COLUMBIA, *et al.*,           :
                                          :
            Defendants.                   :

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendants, pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b), have moved this Court to dismiss the complaint or, in the alternative, for summary judgment. In support of its motion, Defendants state that (1) prior to filing his Complaint Plaintiff failed to exhaust his administrative remedies (2) Plaintiff failed to provide proper service to the District and (3) Plaintiff failed to name a proper Defendant – The DC Department of Corrections.

As a result, Plaintiff's Complaint should be dismissed. The attached memorandum of points and authorities more fully sets forth the grounds for dismissal. A proposed Order is also attached.

September 26, 2007                  Respectfully submitted,

                                    LINDA SINGER
                                    Attorney General for the District of Columbia

                                    GEORGE C. VALENTINE
                                    Deputy Attorney General, Civil Litigation Division

                                    NICOLE L. LYNCH (471953)
                                    Chief, General Litigation Section II

/s/ Carol A. Connolly
CAROL A. CONNOLLY (468126)
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S012
Washington, D.C. 20001
(202) 724-5611
(202) 727-0431 (fax)
E-mail:  carol.connolly@dc.gov

## CERTIFICATE OF SERVICE

Copies filed and served electronically through eFiling for Courts, this 26th day of September 2007 and mailed to:

Inmate Fred Plummer
DC Jail # 224403
1901 D Street, SE
Washington, DC 20003

/s/ Carol A. Connolly
CAROL A. CONNOLLY (468126)
Assistant Attorney General

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| FRED PLUMMER | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 07-01161 |
| v. | : | Judge Urbina |
| | : | |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendants, pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b), have moved this Court to

dismiss the complaint or, in the alternative, for summary judgment. This memorandum of points

and authorities is provided in support of the Defendants' dispositive motion in accordance with

LCvR 7.1(a).

**Preliminary Statement**

On June 27, 2007, Plaintiff filed his complaint requesting protective custody and that he

be placed in a single cell at the DC Jail. *See* Complaint at 1. Plaintiff alleges, among other things,

that inmate # 313865 pushed him and hit his head against the metal bed frame. *See* Id. at 2.

However, besides orally requesting that he be moved, nowhere in the complaint does Plaintiff

allege that he filed a formal grievance or exhausted his administrative remedies. The Department

of Corrections does not have a record of any inmate grievance for these complaints.

3

## <u>Argument</u>

**Standard of Review**

      For many years, the oft-cited standard of review in determining the sufficiency of a complaint when faced with a motion to dismiss was that set forth by the Supreme Court in *Conley v. Gibson*: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957).

      However, in the recent Supreme Court case of *Bell Atlantic Corp. v. Twombley,* 127 S. Ct. 1955 (2007), the Court re-examined *Conley*, observing that "*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough." *Bell Atlantic*, 127 S. Ct. at 1969. The Court concluded that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* (citations omitted).

      The Supreme Court in *Bell Atlantic* stated that a statement of grounds on which a complaint rests "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Rather, the Court now imposes a "plausibility" standard when judging the sufficiency of a complaint in the face of a motion to dismiss. *Id.* In this case, Plaintiffs cannot meet this plausibility standard and their Amended Complaint must be dismissed.

4

If a court considers materials outside the pleadings in a ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must convert the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(b); *see also Haase v. Sessions*, 835 F.2d 902, 905–906 (D.C. Cir. 1987).

### I. Plaintiff Has Not Exhausted His Administrative Remedies

The District submits that Plaintiff's claim against it must be dismissed as Plaintiff has failed to comply with the exhaustion requirements of the Prison Litigation Reform Act ("PLRA") of 1995.  The PLRA provides that:

> No action shall be brought with respect to prison conditions
> under section 1979 of the Revised Statutes of the United States
> (42 U.S.C. 1983), or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until
> such administrative remedies as are available are exhausted.

*See* 42 U.S.C. § 1997e(a) (2002).

The PLRA defines "prisoner" broadly as "*any person* incarcerated or detained in *any facility* who is accused of, convicted of, sentenced for, or adjudicated delinquent for violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (emphasis added); *see also LaFontant v. INS*, 135 F.3d 158, 165 (D.C. Cir. 1998).

There can be no question that the mandates of the PLRA apply to Plaintiff.  At the time Plaintiff filed his Complaint, Plaintiff was a prisoner with the District of Columbia.  Thus, he falls within the broad definition of "prisoner" as set forth in the plain language of the PLRA. Second, Plaintiff's complaints against the District relate to his placement and conditions of confinement while incarcerated; the Supreme Court has made clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

As the Supreme Court held in *Booth v. Churner,* 532 U.S. 731, 738 (2001), an inmate must fully exhaust the grievance procedure offered regardless of whether that procedure offered the remedy the inmate sought. Therefore, Plaintiff was required to exhaust any available administrative remedies available to him before filing the above-styled action.

In our case, the Department of Corrections has administrative procedures for inmate grievances. If an inmate, held in the District of Columbia of Columbia Department of Corrections' facility, wanted to file a grievance, he would first be encouraged to resolve the matter informally. See Exh. 1, Inmate Grievance Procedure ("IGP"). If the matter is not resolved informally, the inmate could then file a formal grievance with the Institution Administrator. *See* Id. If the inmate wishes to appeal the decision of the Institution Administrator he can do so to the Agency Director. If he wishes to appeal the final decision by the Agency Director, he can do so as outlined on pages 10 and 11 of the inmate grievance procedure. Moreover, an explanation of the administrative procedures is provided to inmates upon arrival at a detention facility and inmates can ask any questions about the procedure. Grievance procedures are posted on bulletin boards in the prison and in inmate publications. *See* Id.

In our case, Plaintiff has never filed a formal grievance or exhausted his administrative remedies. *See* Exh.2*,* Affidavit by Sgt. Aden Bushee. As the Supreme Court held in *Jones v. Bock*, US 127 S.Ct. 910, 921(2007), the PLRA exhaustion requirement is an affirmative defense and the Defendants bear the burden of proving a prisoner's failure to exhaust his administrative remedies. Accordingly, in our case the Defendants have met their burden and the Court should

dismiss Plaintiff's lawsuit and permit the Department of Corrections the opportunity to resolve the matter administratively and eliminate the need for judicial action.

### II. Plaintiff Failed to Provide Proper Service to The District of Columbia

Plaintiff has failed to properly serve the District of Columbia by not serving the Mayor. Rule 4(j)(2) governs the service of process upon, *inter alia*, municipal corporations such as the District of Columbia.

Specifically, the rule provides that, "[s]ervice upon a . . . municipal corporation . . . shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant." Fed. R. Civ. P. 4(j)(2). The Superior Court Civil Rules provide that:

> [s]ervice shall be made upon the District of Columbia by delivering (pursuant to paragraph (c)(2)) or mailing (pursuant to paragraph (c)(3)) a copy of the summons, complaint and initial order to the Mayor of the District of Columbia (or designee) and the Corporation Counsel [now Attorney General] of the District of Columbia (or designee). The Mayor and the [Attorney General] may each designate an employee for receipt of service of process by filing a written notice with the Clerk of the Court.

SCR-Civil 4(j)(1).

Accordingly, because Plaintiff failed to serve the Mayor in accordance with SCR-Civil 4(j)(1) his Complaint should be dismissed.

### III. Plaintiff Has Failed To Name A Proper Defendant

The District of Columbia Department of Corrections moves to dismiss the above-styled case for lack of personal jurisdiction of over. It is a well established rule that agencies and departments within the District of Columbia government can not be sued as separate entities.

*See Fields v. District of Columbia Department of Corrections*, 789 F. Supp. 20, 22 (D.D.C. 1992); *Gales v. District of Columbia*, 47 F. Supp. 2d 43, 48 (D.D.C. 1999).

 The Department of Corrections asserts it is an entity of the District of Columbia government and therefore cannot be sues as a separate Defendant. Moreover, in *Reginald Parker v. District of Columbia*, 216 F.R.D. 128, 2002 U.S. Dist. Lexis 26663 (D.D.C. 2002), a case directly on point, the Federal District Court dismissed the Plaintiff's complaint against the District of Columbia Commission on Mental Health Services (DCCMHS), when the Plaintiff failed to name the District of Columbia as a Defendant. The Court found that the DCCMHS was an entity of the District of Columbia and therefore was nonsuable.

 Furthermore, it has been held that a suit against a nonsuable element of the District of Columbia government should not be treated as one naming the District of Columbia as a defendant. See *Kelly v. Morris*, 400 A.2d 1045 (D.C. 1979). As a result, the DC Department of Corrections is not a proper defendant and it should be dismissed from the case.

### Conclusion

 Plaintiff failed to exhaust his administrative remedies, failed to provide proper service to the Mayor, and failed to name a proper defendant. As a result, his complaint should be dismissed.

September 26, 2007     Respectfully submitted,

            LINDA SINGER
            Attorney General for the District of Columbia

            GEORGE  C. VALENTINE
            Deputy Attorney General, Civil Litigation Division

            NICOLE L. LYNCH (471953)
            Chief, General Litigation Section II

<u>/s/Carol A. Connolly</u>
CAROL A. CONNOLLY (468126)
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S012
Washington, D.C. 20001
(202) 724-5611
(202) 727-0431 (fax)
E-mail:  carol.connolly@dc.gov

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| FRED PLUMMER | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 07-01161 |
| v. | : | Judge Urbina |
| | : | |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

**UPON CONSIDERATION** of Defendant's Motion to Dismiss, its memorandum of law

in support thereof, any opposition thereto, and the entire record herein, it is this _____ day

of _____, 2007,

**ORDERED**, that the Defendant's motion be and is hereby **GRANTED**.

**SO ORDERED**.

_____
Judge Ricardo M. Urbina
United States District Court for the District of Columbia

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

FRED PLUMMER                              :
                                          :
              Plaintiff,                   :
                                          :       Civil Action No. 07-01161
              v.                           :       Judge Urbina
                                          :
DISTRICT OF COLUMBIA, *et al.*,            :
                                          :
              Defendants.                  :

**ORDER**

**UPON CONSIDERATION** of Defendant's Motion for Summary Judgment, its

memorandum of law in support thereof, any opposition thereto, and the entire record herein, it is

this _____ day of _____, 2007,

**ORDERED**, that the Defendant's motion be and is hereby **GRANTED**.

**SO ORDERED**.

_____
Judge Ricardo M. Urbina
United States District Court for the District of Columbia



**DISTRICT OF COLUMBIA
DEPARTMENT OF CORRECTIONS**

# Program Statement

| | |
|---|---|
| **OPI:** | **DIR** |
| **Number:** | **4030.1E** |
| **Date:** | **July 1, 2004** |
| **Subject:** | **Inmate Grievance Procedures (IGP)** |

1.  **PURPOSE AND SCOPE.** To update administrative procedures through which inmates of the District of Columbia Department of Corrections (DOC) may seek formal redress of their grievances.

2.  **POLICY.** It is DOC policy to provide an administrative means for expression and resolution of inmate problems through written complaints, responses and appeal.

3.  **APPLICABILITY**

    a.  This Program Statement (PS) applies to persons housed in correctional facilities operated under the authority of the DOC.

    b.  Inmates housed in contract prison facilities shall use the contractor's grievance process, noting the contractor to be responsible for day-to-day operations within the affected facility. Inmates housed in contract prison facilities shall only file a grievance with the DOC when grievance appeal steps within the contractor's grievance process have been exhausted.

4.  **NOTICE OF NON-DISCRIMINATION**

    a.  In accordance with the D.C. Human Rights Act of 1977, as amended, D.C. Code section 2.1401.01 et seq., ("the Act") the District of Columbia does not discriminate on the basis of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, familial status, family responsibilities, matriculation, political affiliation, disability, source of income, or place of residence or business. Discrimination in violation of the Act will not be tolerated. Violators will be subject to disciplinary action.

    b.  DOC prohibits discrimination regarding administrative decisions or program access for inmates.

5.  **PROGRAM OBJECTIVES.** The expected results of this program are:

    a.  Staff is available to counsel inmates on request.

b.    Inmate grievances will be resolved through formal procedures when informal means have failed.

c.    Written responses based upon full investigation and resolution when appropriate including the reasons for the decision shall be given to all inmate grievances within the prescribed time limits.

d.    Inmates will use this procedure and pursue claims in court only if dissatisfied with resolutions obtained from the IGP.

6.    **DIRECTIVES AFFECTED**

a.    **Directive Rescinded**

D.O. 4030.1D    Inmate Grievance Procedure (IGP) (5/4/92)

b.    **Directives Referenced**

1)    PS 2000.2          Retention and Disposal of Department Records (4/6/01)

2)    DO 3350.2C        Sexual Misconduct Against Inmates (12/10/98)

3)    PS 3800.3          Communications for Deaf and Hearing Impaired (9/30/03)

4)    PS  4020.1B        Orientation Program (7/1/04)

5)    PS 4022.1A         Community Correctional Centers Disciplinary Procedures (8/13/02)

6)    SO 5300.1C        Adjustment Board Procedures Detention Services (8/1/04)

7)    PS 4020.1A         Admission and Orientation Program (9/21/00)

8)    PS 4090. 2         Intake Screening (7/1/04)

9)    CA 93-2052        Women Prisoners of DCDC v. DC (6/17/97)

7.    **AUTHORITY.**  DC Code §24-211.02 Powers: Promulgation of Rules

8.    **STANDARDS REFERENCED**

American Correctional Association (ACA) 4th Edition Standards for Adult Local Detention Facilities 4-ALDF-2A-27, 4-ALDF-6B-01 and 4-ALDF-6B-02.

9.  **DEFINITIONS.**  For the purpose of this Program Statement (PS), the following
    definitions apply:

    a.  **Grievance** – An administrative means for the expression and resolution of
        inmate/offender problems.

    b.  **Non-Grievance Issues.**  In accordance with this directive the following issues
        cannot be grieved under this process:

        1)  Parole Commission decisions,
        2)  Decisions of the Adjustment or Housing Boards
        3)  Classification Committee decisions,
        4)  Requests under Freedom of Information Act,
        5)  Inmate Accident Claims, Tort Claims, and
        6)  Complaints filed on behalf of other inmates.
        7)  Inmate class action grievances or petitions

    c.  **Reprisal** – Any overt or covert action or threat of action against an inmate/offender
        for the good faith use of, or participation in, the inmate grievance process.

    d.  **Correctional Facilities**  - Any DOC institution, either contracted or owned by the
        DOC that houses adult inmates/offenders in a halfway house or jail.

10. **RESPONSIBILITIES**

    a.  This directive shall be implemented under the authority of the DOC Director.

    b.  Wardens and the Community Residential Programs (CRP) Administrator shall
        ensure that an appropriate investigation is conducted and an adequate response
        is prepared for each grievance in accordance with the procedures set forth in this
        directive.

    c.  Each facility shall maintain a sufficient supply of Inmate Request Slips for use in
        addressing informal complaints.

    d.  Each facility shall maintain a sufficient supply of IGP forms for formal resolution.

    e.  Each Housing Unit and Community Correctional Center (CCC) shall ensure that
        sufficient forms are available and accessible on the unit during his or her tour of
        duty.

    f.  The IGP shall be available to inmates regardless of any disciplinary, classification,
        or other administrative or legal conditions affecting them.

g.    Employees shall not retaliate or allow other inmates to retaliate against an inmate/offender for participation in the Inmate Grievance Procedure.

11.   **INMATE/OFFENDER NOTIFICATION**

a.    The Warden or the Community Residential Programs (CRP) Administrator shall ensure that this PS and any other written directives pertaining to the Inmate Grievance Procedure (IGP) are readily available to all inmates housed in DOC correctional facilities.

b.    An orientation of the inmate/offender grievance procedure shall also be provided to each inmate/offender upon arrival at a correctional facility. During orientation each inmate/offender shall be given the opportunity to ask questions concerning the IGP and given an opportunity to have these questions answered orally.

c.    This PS shall be made readily available in the law library and case manager offices, posted on inmate/offender bulletin boards and, as appropriate, shall be described in inmate/offender handbooks.

d.    Female inmates/offenders shall be advised of the provisions of CA 93-2052 <u>Women Prisoners v. DC and DO</u> 3350.2C Sexual Misconduct Against Inmates (12/10/98), allowing them to through the inmate grievance form or notice to an employee or inmate representative on the Inmate Grievance Advisory Committee (IGAC) to report verbally or in writing instances of sexual harassment.

e.    The Warden shall ensure that non-English speaking inmates, inmates who cannot read or are otherwise impaired (physically or mentally), receive assistance in order to understand and access the IGP.

12.   **STAFF NOTIFICATION/TRAINING**

a.    The Deputy Director for Operations and CRP Administrator shall ensure that this PS and any other written directives pertaining to the IGP shall be made available to all staff assigned to correctional institutions.

b.    The Department's Training Academy shall include a discussion of the IGP PS as part of its Pre-service and In-service training curriculum for employees.

c.    Staff members shall have an opportunity to ask questions regarding the IGP and will be given an opportunity to have these questions answered orally.

d.    The Training Administrator shall maintain the signed acknowledgements on file.

13. **INMATE GRIEVANCE PROCEDURE (IGP) COORDINATOR**

    a.   The Warden and the CRP Administrator shall appoint an IGP Coordinator who shall:

        1)   Coordinate activities and operations associated with IGP retrieval, distribution, tracking, database entry, monitoring and establishment of resolution suspense dates.

        2)   The CDF IGP Coordinator or designee shall collect grievances from each housing unit 'IGP" mailbox on a daily basis (excluding Saturdays, Sundays and legal holidays).

        3)   Maintain the JACCS electronic data input and tracking.

        4)   Apprise the affected Warden or CRP Administrator on the next business day when suspense dates are not met.

        5)   If the inmate/offender is transferred to another facility under the jurisdiction of or contract with DOC, the IGP Coordinator shall forward the response to the IGP Coordinator at the affected facility.

        6)   The IGP Coordinator where the inmate is located shall ensure that the response is forwarded to the inmate/offender and a copy placed in the inmate's official institutional record.

    b.   The Director and Deputy Director shall assign staff to perform the above stated duties at the respective appeal levels.

14. **GRIEVANCE PROCESS**

    a.   **Informal Resolution**

        1)   Executive staff, Chief Case Managers, Case Managers, Correctional Supervisors, Correctional Counselors and Housing Unit Officers shall make every attempt to keep the channels of communication open between staff and inmates/ offenders and shall informally resolve issues expeditiously whenever possible.

        2)   Whenever an inmate/offender has a dispute or complaint, the inmate/offender should, whenever appropriate and possible, first seek to resolve this situation informally by completing an Inmate Request Slip or verbally notifying and discussing the complaint with the relevant parties or an appropriate DOC employee or manager.

3)      Inmate Request Slips, for the purpose of informal resolution, shall be placed in the institutional or CCC mailbox and not in the IGP mailbox.

4)      The staff person receiving the initial complaint shall discuss and document his or her efforts to informally resolve the complaint at this level within 7 calendar days.

b.   **Formal Resolution**

1)      Whenever an inmate/offender has not been able to resolve a complaint through informal means, he or she may file a formal grievance by completing an IGP Form 1 (Attachment A).

2)      DOC also strictly prohibits reprisals against inmates/offenders for the good faith filing of grievances or legal actions. Inmates who believe they have been subjected to reprisals for using the IGP may submit a subsequent grievance seeking a remedy.

3)      The inmate/offender must attach documentation of efforts to reach informal resolution.  Each grievance must pertain to one specific incident, charge or complaint.

4)      Inmates/offenders shall not submit duplicate copies of the same grievance.

5)      Inmates may request IGP Forms from any staff member who is assigned to his or her housing unit and the affected staff member shall ensure that inmates who request an IGP Form are provided a form during his or her shift or tour of duty.

6)      If an IGP Form 1 cannot be obtained, an inmate/offender may submit his or her grievance on standard, letter-sized paper.  This grievance should contain the following information:

   a)      The name and DOC number of inmate/offender filing the grievance;

   b)      The name of the institution or community correctional center where the inmate/offender is housed;

   c)      The nature of the complaint or grievance, date of occurrence, and the remedy sought;

   d)      The inmate/offender's signature; and

   e)      Date.

7)  Whenever a grievance does not receive a response within the prescribed response time as established in this PS:

   a)  The inmate/offender may attach a copy of the grievance to the IGP Form 2 or 3 as is appropriate and forward it to the next step in the grievance process for response.

   b)  An inmate/ offender may waive this right if he or she has agreed in writing to an extension of the allowable response time.

   c)  The specific length of the extension shall also be stated in writing.

8)  An inmate/offender's failure to adhere to any of the prescribed requirements of this PS can result in a grievance being dismissed.  However, if an inmate/offender can provide and explanation why they do not have a receipt or if they are appealing to the next level due to no response within the time limit allotted and is without a decision for the level below, these irregularities will be excused.

9)  Complaints listed as non-grievance issues shall also be dismissed.

## 15.  PROCEDURES FOR FILING AN INMATE/OFFENDER GRIEVANCE

a.  **Inmates at CDF**

   1)  Each formal grievance must be filed within 15 calendar days of the incident that precipitates the filing of a grievance or within 15 days when the inmate/offender became knowledgeable of the incident that he or she believes has cause for filing of a grievance.

   2)  Inmates/offenders shall use Blue IGP Form 1 (Attachment A) to file a grievance.  If an IGP Form 1 cannot be obtained, an inmate/offender may submit the grievance on standard, letter-sized paper.

   3)  A secured IGP collection box shall be placed in a location accessible to all inmates.   The inmate/offender shall place the IGP form in the locked box marked "GRIEVANCES."

   4)  Inmates housed in segregation units shall deposit the IGP form in the locked box marked "GRIEVANCES" during their individual recreation time.  An inmate in this status may also submit the IGP to their assigned case manager or a supervisor, having first placed the IGP form in a sealed envelope.  The case manager or supervisor shall then place the IGP form in the locked box marked "GRIEVANCES".

PS 4030.1E
7/1/04
Page 8 of 14

b.    Community Correctional Center

    1)    Inmates/offenders housed in contract halfway houses shall exhaust all provided remedies in the affected facility to include formal and informal resolution efforts.

    2)    Inmates/offenders housed in contract halfway houses may file an IGP with the DOC Community Residential Programs (CRP) Administrator

    3)    Offenders who are housed in a contract halfway house shall submit the IGP to the DOC Community Residential Administrator.

c.    **IGP Coordinator**

    1)    The IGP Coordinator or designee shall collect grievances from each CDF housing unit locked grievance box daily, Monday through Friday.

    2)    The CRP Administrator or designee shall receive IGPs through the mail.

    3)    The IGP Coordinator shall inform the inmate/offender in writing of the appropriate administrative procedure if the request or appeal is not acceptable under the IGP.

    4)    The IGP Coordinator shall generate the inmate/offender receipt using the Crystal Report "G – IGP Grievance Receipt" (Attachment B).

    5)    The IGP Coordinator shall forward the inmate/offender receipt via the institutional mail.

    6)    The IGP Coordinator shall input required complaint data into the JACCS "Grievance" Data Entry Screen (See Attachment C) to include:

        a)    Grievance Entry Information - The IGP Codes (Attachment D) shall be used for the JACCS Grievance Type code to indicate the subject of the complaint in order to permit efficient reporting, tracking and monitoring of all inmate/offender complaints, on all IGP logs and reports.

        b)    Submitted for Review Information

        c)    Referred to Investigation

        d)    Extension of Time requested and new date for response if the inmate/offender consents

        e)    Finding Response

        f)    Final Appeal Ruling (when applicable)

7) The IGP Coordinator shall scan the IGP document image into JACCS.

8) The IGP Coordinator shall then forward the complaint to the appropriate manager for investigation and resolution, along with a photocopy to the affected Warden.

d. **Investigation**

1) Staff who are implicated or involved in a grievance are prohibited from investigating that grievance.

2) The manager shall impartially investigate the complaint and make every effort for reasonable resolution. Resolution may result in a further assessment and improvement of management or operational controls.

3) Inmates/offenders may not participate in the resolution of an inmate's/offender's grievance.

e. **Response to IGP**

1) The manager shall provide a written response in memorandum format via the IGP Coordinator to inmate/offender grievances within 21 calendar days following receipt of the grievance.

2) The affected Warden shall review and approve/disapprove or otherwise revise the response.

3) Inmates/offenders shall be provided with written justification for any decision that is rendered on their grievance or grievance appeal.

4) Upon satisfactory completion of the complaint resolution, the Warden shall return the IGP to the IGP Coordinator for distribution to the inmate.

5) In any instance when the IGP Coordinator, in consultation with the affected Warden and the investigating manager, determines that a sufficient response to a grievance cannot be rendered within the prescribed time limitation, the following conditions apply:

   a) The affected inmate/offender must be notified in writing of the need for the extension and of the specific length of the extension.

   b) The inmate/offender must agree in writing to the extension.

   c) Otherwise, when a grievance does not receive a response within the prescribed response time, as established in this PS, the

inmate/offender may proceed to the next step in the grievance procedure.

16. **PROCEDURES FOR FILING AN APPEAL**

a. **Central Detention Facility**

1) If an inmate housed at the CDF is not satisfied with the Warden's response to a grievance, he or she may file an appeal to the Deputy Director.

2) This appeal shall be filed within 5 calendar days of receipt of the grievance response from the Warden, using Green IGP Form 3 (Attachment F). The appeal shall be accompanied by a copy of the original grievance and the Warden's response and supporting documentation. If an IGP Form 3 cannot be obtained, an inmate/offender may submit the grievance on standard letter-size paper.

3) The Deputy Director shall respond to an appeal within 21 calendar days following its receipt.

b. **Corrections Corporation of America Correctional Treatment Facility**

1) Inmates/offenders housed in the CTF shall exhaust all provided remedies in the affected facility to include formal and informal resolution efforts.

2) The CCA Warden shall ensure that sufficient grievance and appeal forms are available on the housing units at the CTF.

3) If the inmate/offender is not satisfied with his or her response from the CTF Warden he or she may file an appeal to the Deputy Director within 5 calendar days, using Green IGP Form 2 (Attachment F) or plain letter-size paper. If an IGP Form 2 cannot be obtained, an inmate/offender may submit the grievance on standard letter-size paper. This appeal must be accompanied by copies of the original grievance and responses, and appropriate support documentation, from the CCA/CTF Warden.

4) The Deputy Director or designee shall investigate and respond to the appeal within 21 calendar days following its receipt.

c. **Contract Community Correctional Center**

1) If an inmate/offender housed in a contract community correctional center is not satisfied with his or her response from the CRP Administrator he or she may file an appeal to the Deputy Director within 5 calendar days, using Pink IGP Form 2 (Attachment E). If an IGP Form 3 cannot be obtained, an

inmate/offender may submit the grievance on standard letter-size paper. This appeal must be accompanied by copies of the original grievance and responses, and appropriate support documentation, from the CRP Administrator.

2) The Deputy Director or designee shall respond to the appeal within 21 calendar days following its receipt.

d. **Appeals Process – Final Level**

1) As a final appeal, an inmate/offender housed in a correctional facility under the jurisdiction of or contract with DOC, who is dissatisfied with an appeal decision rendered by the Deputy Director may submit his or her grievance to the Director within 5 calendar days following the receipt of a grievance appeal response.

2) The Yellow IGP Form 4 (Attachment G) shall be used for filing an appeal to the Director. Appeals to the Director must be accompanied by the original grievance along with the corresponding responses. If an IGP Form 4 cannot be obtained, an inmate/offender may submit the grievance on standard letter-size paper.

3) The Director shall respond to an inmate's/offender's appeal within 21 calendar days following its receipt.

4) The Director shall be the final level of appeal for each inmate/offender who files a Grievance within the DOC Inmate Grievance Procedure.

17. **PROCEDURES FOR FILING AN EMERGENCY GRIEVANCE**

a. Emergency grievances shall be defined as matters in which an inmate/offender would be subjected to substantial risk of personal injury, or serious and irreparable harm, if the inmate/offender filed the grievance in the routine manner with the normally allowed response time.

b. The inmate/offender must prominently label and identify the grievance as an "Emergency Grievance" at the top of the IGP Form 1 and state the nature of the emergency.

c. The inmate/offender shall file the emergency grievance in a sealed envelope; also marking it as an emergency grievance. The inmate/offender shall address his or her Emergency Grievance to the lowest administrative level at which an appropriate remedy can be achieved (i.e., CRP Administrator, Warden, or Director).

PS 4030.1E
7/1/04
Page 12 of 14

d.   If an inmate's/offender's grievance is of a sensitive nature and he/she has reason to believe that he/she would be adversely affected if it was to become known at the institutional level, he/she may file the grievance directly with the Director. All such Emergency Grievances may be forwarded via the regular institutional mail.

e.   The IGP Coordinator shall immediately review and consult with the Warden, or Administration/CRP Administrator to determine if the complaint is of an emergency nature as defined in this directive.

f.   The inmate shall be informed if the grievance is not accepted as an emergency grievance and that the grievance shall be treated as a regular grievance.

g.   The following special provisions shall apply to Emergency Grievances:

   1)   An emergency grievance shall be responded to within 72 hours of its receipt.

   2)   Within 48 hours of receiving a response to the emergency grievance, an inmate/offender may appeal to the next level of the IGP appeal process.

18.  **REPORTING**

a.   Each IGP Coordinator shall print the Crystal Report "G – IGP Complaint Log" (Attachment H) that records all formal grievances entered in JACCS under the IGP. Not later than the 10th day of each month, a copy of this log, reflecting grievances filed during the previous month, shall be forwarded through the affected Deputy Director.

b.   Each DOC official who renders a decision on an Inmate Grievance Appeal shall print the Crystal Report "G – IGP Appeal Log" (Attachment I) that records all appeals entered in JACCS under the IGP. Not later than the 10th day of each month, a copy of this log, that reflects appeals filed during the previous month, shall be forwarded through the affected Deputy Director to the Director.

c.   The IGP Coordinator shall print the Crystal Report "G – Unresolved Grievance Log" (Attachment J) that tracks and monitors the progress of grievances remaining unresolved more than 22 days after receipt. Not later than the tenth 10th day of each month, a copy of this log, which reflects all unresolved grievances, shall be forwarded through the affected Deputy Director to the Director.

d.   All records, logs, and reports that pertain to an inmate/offender grievance shall be maintained in accordance with the DOC Records Retention and Disposal Schedule.

19.  **EVALUATION**

a.  **Internal Program Review.**  When managers determine that the results of an inmate/offender grievance point to systemic deficiencies, appropriate improvements shall be taken. Improvements may include recommendations for procedural changes to correct systemic problems, refresher training, counseling or discipline when the investigation findings clearly point to this as the appropriate action.

b.  **Annual Statistical Summary Report.**  The Office of Management Information and Technology Services shall maintain the database and provide an annual statistical summary of the DOC IGP and submit it to the Director and the Office of Internal Controls, Compliance and Accreditation. This summary shall be provided by the 21st day of October for the preceding fiscal year.

c.  At a minimum, the reviews described above, shall include assessments of the following operational factors:

1)  Compliance with Response Time – An assessment to determine if inmate grievances are responded to within the prescribed time periods.

2)  Availability of Forms – A determination of the accessibility and availability of the forms used to submit grievances.

3)  Response to Grievances – An analysis to determine if appropriate responses and remedies are being provided in response to grievances.

4)  Credibility of the System – An assessment of inmate knowledge of, satisfaction with, and confidence in the IGP.

5)  Conclusions and Recommendations – An evaluation of the data generated through the IGP process (i.e., number of grievances, types of grievances filed, number and types of grievances by institutions). This data shall be used to develop specific conclusions and recommendations regarding Department operations and the DOC IGP.

d.  **Senior Executive Review.**  The designated senior executive manager assigned to evaluate the IGP process shall conduct not less than annual audits and monitor compliance at subsequent reviews.

e.  **Risk Management.**  The Risk Manager shall review crystal reports and annual audits and in conjunction with the Warden determine plans of action where warranted to improve safety, quality and program performance.

20. **CONFIDENTIALITY**

Records concerning an individual's participation in the IGP are considered confidential. These records shall be made available in accordance with the established procedures for confidential records and information, as contained in the D. C. Freedom of Information Act.


Odie Washington
Director


**ATTACHMENTS**

A.    Blue IGP Form 1 (Administrative Remedy to Warden/CRP Administrator)
B.    Crystal Report – "IGP Grievance Receipt"
C.    JACCS Grievance Data Entry Screen
D.    Grievance Codes
E.    Pink IGP Form 2 (CCC Inmate Appeal to Deputy Director)
F.    Green IGP Form 3 (CDF and CCA/CTF Inmate Appeal to Deputy Director)
G.    Yellow IGP Form 4 (Appeal to Director)
H.    Crystal Report - Monthly IGP Complaint Log (IGP Form 6)
I.    Crystal Report - Monthly IGP Appeal Log (IGP Form 7)
J.    Crystal Report - Unresolved IGP Log (IGP Form 8)

Warden's Request for Administrative Remedy

PS 4030.1E
July 1, 2004
Attachment A

District of Columbia
**Department of Corrections**
IGP Form 1 (Rev 7/1/04)

Type or use ballpoint pen.  If additional space is needed, attach an original and three copies.
ARP Form 1 may be used until supply exhausted.

From: _____

LAST NAME, FIRST NAME, MIDDLE INITIAL        DCDC No.        CELL/BLOCK No.        FACILITY

PART A – INMATE REQUEST

DATE                                SIGNATURE OF INMATE/OFFENDER

PART B – RESPONSE

DATE            IGP No.        COMPLIANT TYPE CODE        SIGNATURE OF WARDEN/ADMINISTRATOR

Original – Inmate/Offender                    **BLUE FORM**
Copy Warden
Copy Inmate/Offender File

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

FRED PLUMMER                          :
                                      :
              Plaintiff,              :
                                      :        Civil Action No. 07CV-01161
       v.                             :        Judge Urbina
                                      :
DISTRICT OF COLUMBIA, *et al.*,       :
                                      :
              Defendants.             :

## DECLARATION OF SGT. ADEN BUSHEE

I, Sgt. Aden Bushee, pursuant to 28 U.S.C., 1746, declare under penalty of

perjury that the foregoing is true and correct:

1.     I am the Litigation Coordinator for the Department of Corrections (DOC). In

this capacity, I assist the DOC General Counsel's Office in providing litigation support to

the Office of Attorney General.

2.  I have reviewed the records of inmate Fred Plummer DCDC 224-403 to

determine if he filed a formal grievance and/or exhausted his administrative remedies before

filing the above-styled civil action.

3.  I have conducted a diligent search of the records pertaining to inmate Fred

Plummer. The result of the search is that Mr. Plummer has not filed any formal

grievance with the District of Columbia Department of Corrections regarding the incident

that occurred on or about June 27, 2007, pertaining to his complaint requesting protective

custody and that he be placed in a single cell at the DC Jail.

4.    I have provided this affidavit of my own free will and was neither coerced, threatened nor promised remuneration of any kind to do so.

Dated:  9/24/07

Sgt. Aden Bushee